## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ATLANTIC SPECIALTY
INSURANCE COMPANY,

     Plaintiff,

v.                             Case No. 6:23-cv-626-RBD-DCI

R L BURNS INC.; BURNS
DEVELOPMENT LLC; ROBERT L.
BURNS; and DEBORAH BURNS,

     Defendants.

_____

## PRELIMINARY INJUNCTION ORDER,
## ORDER STAYING CASE AS TO R L BURNS INC.,
## <u>AND ORDER TO SHOW CAUSE</u>

Before the Court is Plaintiff's Motion to Extend Preliminary Injunction Order (Doc. 34 ("Motion")) and Defendant R L Burns, Inc.'s Suggestion of Bankruptcy (Doc. 38).

## INTRODUCTION

In this surety case, after briefing and a hearing (Docs. 21, 25, 27, 28), the Court entered a time-limited preliminary injunction set to expire June 13, 2023, with instructions to the parties to confer about various issues and to file a joint status report. (Doc. 31.) Three days after the hearing, Defendant R L Burns, Inc. filed for bankruptcy. (Doc. 38.)

Despite the automatic stay as to R L Burns, Inc., the Court's Order remained in effect for the other three Defendants and their counsel, Michael A. Hornreich, Esq.—but they did not comply with the Court's directive to meet and confer concerning their finances, nor did they participate in filing the required status update. (Docs. 31, 34, 34-1, 35.) The Court held a teleconference on the issue, but Mr. Hornreich had no explanation for failing to follow the Court's Order, so the Court indicated it would issue an Order to Show Cause as to why he and his clients should not be sanctioned. (Doc. 39.)

Plaintiff also moves to extend the preliminary injunction (Doc. 34), which is due to be granted on the basis of the record. The Court sets forth again the basis for the injunction below. *See* Fed. R. Civ. P. 65(d)(1).

## BACKGROUND

Plaintiff issues construction bonds and serves as a surety. (Doc. 21-2, ¶ 3.) Defendants are a construction company, its development arm, and its principals. (*See id.* ¶ 4.) In November 2020, Plaintiff issued bonds to Defendants for three sets of public construction projects. (*Id.* ¶ 10.) In return, Defendants entered into an indemnity agreement with Plaintiff to secure the bonds. (*Id.* ¶ 6; Doc. 21-2 ("Agreement").) All four Defendants are signatories to the Agreement and indemnitors on the bonds. (Doc. 21-2, pp. 6–7.)

Under the Agreement, Defendants are required to indemnify Plaintiff for all

2

expenses Plaintiff incurs because of providing the bonds or any default by Defendants. (*Id.* at 2.) Defendants are also required to pay Plaintiff "[a]ny amount sufficient to discharge any claim made against [Plaintiff] on any bond," in the amount Plaintiff "deem[s] is sufficient to protect it from loss," which Plaintiff may use to pay claims or hold as "collateral security." (*Id.*) In the Agreement, Defendants explicitly acknowledge that their failure to pay a request for collateral "will cause irreparable harm" and entitles Plaintiff to "injunctive relief for specific performance." (*Id.*)

In January 2023, Defendants notified Plaintiff that their company was in trouble and asked for Plaintiff's help to pay construction costs so they could finish the three projects. (Doc. 21-1, ¶ 12.) Several of Defendants' subcontractors and suppliers then made claims on the bonds, and one of them sued. (*Id.* ¶¶ 14, 20.) Plaintiff has already paid out nearly $500,000 for claims so far. (*Id.* ¶ 24.)

In March 2023, to cover the claims and other potential liability, Plaintiff asked Defendants to pay over $3 million in collateral security. (*Id.* ¶¶ 17, 25.) Plaintiff will return any money that is not used to cover the claims-related expenses. (*Id.* ¶ 28.) In response to Plaintiff's demand, Defendants offered for collateral their office building, which they intend to sell; the estimated value of the property is $2 million less a mortgage of about $700,000, putting them over $1.7 million short of Plaintiff's request for $3+ million. (*Id.* ¶ 26.)

So in April 2023, Plaintiff sued Defendants for: (1) specific performance; (2) breach of contract; (3) exoneration; (4) indemnity; (5) equitable subrogation; and (6) a quia timet injunction. (Doc. 9.) In early May, Plaintiff moved for a preliminary injunction on the specific performance claim (Doc. 21), which the Court granted, with the injunction set to expire on June 13, 2023 (Doc. 31). Plaintiff now moves to extend the injunction. (Doc. 34.)

## STANDARDS

To obtain a preliminary injunction, a movant must show: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) . . . the injunction would not be adverse to the public interest." *7-Eleven, Inc. v. Kapoor Bros. Inc.*, 977 F. Supp. 2d 1211, 1219 (M.D. Fla. 2013); *see also* Fed. R. Civ. P. 65; Local Rule 6.02.

## ANALYSIS

Here, Plaintiff has shown all four requirements necessary to entering an injunction. First, Plaintiff argues that it is likely to succeed on the merits of its specific performance claim. (Doc. 21, pp. 12–17.) Defendants do not contest that Plaintiff is likely to succeed on the merits. (*See* Doc. 25.) Specific performance is available when: (1) the plaintiff is "clearly entitled" to it; (2) there is no adequate

remedy at law; and (3) justice requires it. *Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005). Courts have regularly found that sureties are "entitled to specific performance of collateral security clauses." *Travelers Cas. & Sur. Co. of Am. v. Indus. Com. Structures, Inc.*, No. 6:12-cv-1294, 2012 WL 4792906, at *4 (M.D. Fla. Oct. 9, 2012) (cleaned up); *see, e.g., Devs. Sur. & Indem. Co. v. Hansel Innovations, Inc.*, No. 8:14-cv-425, 2014 WL 2968138, at *6 (M.D. Fla. July 1, 2014); *Cincinnati Ins. Co. v. Water Equip. Servs., Inc.*, No. 8:07-cv-1641, 2008 WL 11446467, at *5 (M.D. Fla. July 8, 2008). Here, the Agreement clearly requires specific performance and acknowledges the inherent irreparable harm. (Doc. 21-2, p. 2.) And Defendants do not contest that they are obligated to pay Plaintiff the demanded collateral security and have not paid. (*See* Doc. 25.) So Plaintiff has established that it is likely to succeed on the merits of its specific performance claim.

Second, Plaintiff argues that it will suffer irreparable harm if the injunction does not issue. (Doc. 21, pp. 17–18.) Defendants also do not contest this element. (*See* Doc. 25.) Courts have recognized that "a surety's loss of its right to collateralization cannot be adequately remedied through monetary damages." *Hansel*, 2014 WL 2968138, at *6. Here, the injury to Plaintiff's right to collateralization while claims against the bonds are pending cannot be fully remedied by a later award of money damages. *See id.* So Plaintiff has met this element.

Third, Plaintiff argues that the threatened injury it faces outweighs any harm an injunction would cause to Defendants. (Doc. 21, pp. 18–19.) Here, Defendants object, arguing that an injunction would make it impossible for them to finish the projects and potentially put them out of business. (Doc. 25, pp. 4–5.) But courts dealing with similar situations have found that the balance of equities favors the surety. *Hansel*, 2014 WL 2968138, at *6. The Agreement requires Defendants to collateralize Plaintiff, so any harm to Defendants in ordering them to pay what they have already agreed to pay does not outweigh the potential harm to Plaintiff—regardless of the financial difficulty to Defendants. *See id.*; *see also Hanover Ins. Co. v. Holley Constr. Co. & Assocs.*, No. 4:11-cv-41, 2012 WL 398135, at *6 (M.D. Ga. Feb. 7, 2012) (rejecting argument that balance of equities favored defendant even where defendant would "likely have to declare bankruptcy" if forced to comply with collateral security agreement). And courts have regularly prohibited defendants from selling or transferring their assets until they come up with collateral. *See, e.g.*, *Hansel*, 2014 WL 2968138, at *8; *Devs. Sur. & Indem. Co. v. Elec. Serv. & Repair, Inc.*, No. 09-21678-CIV, 2009 WL 3831437, at *2 (S.D. Fla. Nov. 16, 2009). Moreover, any money held as collateral that does not end up being used to pay claims-related expenses will be returned, minimizing the risk of long-term harm to Defendants. (Doc. 21-2, ¶ 28); *see Hanover*, 2012 WL 398135, at *6. So Plaintiff has met this element.

Finally, Plaintiff argues that the injunction would either serve the public interest or be neutral. (Doc. 21, pp. 19–20.) Defendants counter that declining to enter the injunction would serve the public interest because they would be able to complete their public construction projects, including "critical infrastructure and affordable housing." (Doc. 25, p. 5.) But courts have found that the public interest is served by upholding surety agreements and ensuring the "continued solvency of surety companies for the public benefit." *Elec. Serv. & Repair*, 2009 WL 3831437, at *2; *see also Hansel*, 2014 WL 2968138, at *7. So Plaintiff has met this element. With all four requirements met, the Court finds that Plaintiff is entitled to a preliminary injunction as requested.

Given that Defendants and their counsel have failed to comply with the Court's Order directing them to confer with Plaintiff on the state of their finances, there is ample basis to extend the previously entered injunction to maintain the status quo. (*See* Docs. 31, 34, 34-1, 35.) That said, because R L Burns Inc. is now in bankruptcy (Doc. 38), this Order does not apply to it based on the automatic bankruptcy stay. *See* 11 U.S.C. § 362; *see also Deforest v. Johnny Chisholm Glob. Events, LLC*, No. 3:08-cv-498, 2010 WL 1792094, at *4 (N.D. Fla. May 4, 2010), *adopted*, 2010 WL 2278356 (N.D. Fla. June 4, 2010). So the case is due to be stayed as to R L Burns Inc. only. But the remaining Defendants—Burns Development LLC, Robert L. Burns, and Deborah Burns—and their counsel Mr. Hornreich are

reminded that R L Burns Inc.'s bankruptcy does not stay the case as to them. *See*
*Roca v. Alphatech Aviation Servs., Inc.*, No. 12-23955-CIV, 2014 WL 12802937, at *1
(S.D. Fla. Nov. 25, 2014). Those three Defendants are all signatories on the
Agreement and indemnitors on the bond regardless of whether R L Burns, Inc. is
still in the case. (Doc. 21-2, pp. 6–7.) And this Court's Orders remain in full effect
as it pertains to them. So R L Burns, Inc.'s bankruptcy offers no valid excuse for
their failure to follow the Court's direction to confer with Plaintiff and participate
in filing the status report.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1.     This case is **STAYED** as to Defendant R L Burns Inc. only.

2.     By **Friday, August 11, 2023**, and every sixty days thereafter, Plaintiff
       is **DIRECTED** to file a status report concerning R L Burns Inc.'s
       bankruptcy proceedings.

3.     Plaintiff's Motion (Doc. 34) is **GRANTED**.

4.     The Court's Preliminary Injunction (Doc. 31) is **EXTENDED** through
       the pendency of this case unless otherwise ordered, except as it
       pertains to R L Burns Inc. For enforcement purposes, the Preliminary
       Injunction is set forth in full below. *See* Fed. R. Civ. P. 56(d)(1)(C).

5.     Defendants Burns Development LLC, Robert L. Burns, and Deborah

8

Burns are **ORDERED**, jointly and severally, to place good and sufficient collateral with Plaintiff Atlantic Specialty Insurance Company totaling $3,053,917.00.

6.      Unless and until Defendants Burns Development LLC, Robert L. Burns, and Deborah Burns, jointly and severally, place good and sufficient collateral with Plaintiff Atlantic Specialty Insurance Company totaling $3,053,917.00, Defendants Burns Development LLC, Robert L. Burns, and Deborah Burns are **PRELIMINARILY ENJOINED** from transferring, selling, disposing of, alienating, or encumbering any of their assets.

7.      This Order does not prohibit Defendant Burns Development LLC from paying expenses incurred in the ordinary course of business, nor does it prohibit Defendants Robert L. Burns or Deborah Burns from paying for ordinary living expenses.

8.      The parties agreed, and the Court finds, that no injunction bond is required from Plaintiff to secure the issuance of this Order.

9.      This Preliminary Injunction continues through the pendency of this case unless otherwise ordered.

10.     By **Friday, June 16, 2023**, Defendants Burns Development LLC, Robert L. Burns, and Deborah Burns and their counsel,

9

Michael A. Hornreich, Esq., are **ORDERED TO SHOW CAUSE** by written response why they should not be sanctioned for failing to comply with the Court's Order requiring them to confer with Plaintiff and to participate in filing a joint status report. (Doc. 31, pp. 6–9; *see* Doc. 34-1); *Dines v. McDonough*, No. 8:07-cv-693, 2007 WL 2479668, at *1 (M.D. Fla. Aug. 28, 2007).

11. By **Friday, June 30, 2023**, Defendants Burns Development LLC, Robert L. Burns, and Deborah Burns and their counsel, Michael A. Hornreich, Esq., are **ORDERED** to meet and confer with Plaintiff and its counsel on the issues the Court previously directed.[1] By that same deadline, Mr. Hornreich is **ORDERED** to file a notice certifying in writing that he has complied with this directive.

---

[1] Specifically: (1) whether Plaintiff will accept the sale of Defendants' commercial office property offered as partial collateral and a procedure for accomplishing that sale and paying the proceeds to Plaintiff (or whether the parties can come to some other arrangement concerning that property), only to the extent the sale is unaffected by R L Burns Inc.'s bankruptcy proceedings; (2) the specifics of and a schedule for the accounting requested by Plaintiff from Burns Development LLC, Robert L. Burns, and Deborah Burns concerning all income received and expenses paid along with backup documentation; (3) what assets are available (from all three of those Defendants) other than the office building to pay the remainder of the collateral demand; (4) whether the parties agree to Defendants being required to seek Plaintiff's approval for significant purchases or sales and how those will be defined; (5) carve-outs of specific assets, accounts, and the like that Defendants would be permitted to spend on ordinary business or living expenses without approval by Plaintiff; and (6) the transparent state of Defendants' financial affairs, including the likelihood of any of the other three Defendants declaring bankruptcy and any family court, state court, or bankruptcy proceedings (pending or forthcoming) that may affect the priority of Plaintiff's security interest.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 12, 2023.

ROY B. DALTON JR.
United States District Judge